# RAYMOND & RAYMOND
Attorneys at Law

Herbert B. Raymond, Esq.
Jeffrey M. Raymond, Esq.
Kevin DeLyon, Esq.

7 Glenwood Avenue, 4th Fl., Ste. 408
East Orange, NJ 07017
Telephone (973) 675-5622
Facsimile (408) 519-6711
Email: herbertraymond@gmail.com
Website: www.bankruptcylaw123.com

October 18, 2020

Honorable Christine Gravelle, U.S.B.J.
U.S. Bankruptcy Court
402 E. State St.
Trenton, NJ 08608

    Re: Hesham Eldeib, Debtor
        20-17508 CMG
        Chapter 13
    Proceeding: Objection(s) to Confirmation
    Hearing Date: November 18, 2020 @ 10:00 A.M.

Dear Judge Gravelle:

    Please accept this letter in response to the Objection filed by the Chapter 13 Trustee in the above-captioned matter. The Chapter 13 Trustee's Objection pre-dates the Chapter 7 Trustee's Objection and pertains to the same or similar issues, thus there is no reason to formally reply to the Chapter 7 Trustee's Objection.

    The Trustee[1] asserts that the Debtor failed to provide updates as to automobile insurance and model and package information as to the amendment to the petition regarding the Kia Sorrento. The updated auto insurance has been provided and uploaded to the Trustee as requested. The automobile, with appropriate package, has been booked and the new values, uploaded to the Trustee as well. The car has various dings and other body issues suggesting a less than very good condition. The Debtor has valued the car by averaging the 'Very Good' and 'Good' conditions as part of the online car valuation process, which account for the current condition of the automobile. The various auto valuations, obtained from a popular online car valuation site, 'Kelley Blue Book', have been provided to the Chapter 13 Trustee.

---

    [1] Trustee will refer to the Chapter 13 Trustee unless otherwise noted.

As to the real estate, I have had extensive discussions with the Debtor's appraiser. The property has been appraised and the appraisal report has been uploaded to the Trustee. According to the appraiser, the property is located in a retirement section in Toms River called Holiday City. The appraiser indicated that all of the units in the development are very similar in size and that the value is largely dependent on the location within the development and condition of the property. The appraiser indicated that there are many units for sale and that have sold and that there is a broad range in values. Some values appear to be foreclosures or units in bad condition requiring extensive repair. The appraiser also indicated that just like in other areas in the state, there is an upswing, or upward trend in real estate values.

As to this particular property, the condition is good and the property is in decent shape but it is not 'over the top' and the location is good but not the best location within the development. The market analysis, which the Debtor relied upon in connection with the filing and which was provided to the Trustee, at the time it was obtained by the Debtor from the realtor, which was December 16, 2019, represented market value of the property, according to the Debtor's appraiser. The appraiser indicated that the value was clearly defensible. Since that time, however, there has been, in some cases, material increases in property values across the state. The highest valuations are in the northern areas of the state but there are value increases all over. The appraiser valued this property at $105,000, at the time of filing. The appraisal has been uploaded to the Chapter 13 Trustee.

According to the Chapter 7 Trustee the property has a value which is greater that the petition stated value[2]. In the interest of justice and fairness, the Debtor, for purposes of determining equity and the amount to be paid to unsecured creditors, has averaged the appraised value and the Chapter 7 Trustee real estate broker obtained value. The Debtor believes that this mid valuation point or compromise value is a fair way to determine value without requiring the parties to conduct a formal valuation. However, the Debtor's appraiser is ready, willing and able to support the information contained in this letter and/or the appraisal report, with a certification, or in person or video testimony, if required. The hope is that, for cost purposes[3], that step is not necessary and the Debtor has now

---

[2] Importantly the petition stated value relies on the December 16, 2019, market analysis obtained by the Debtor and the Debtor's belief, that this continued to represent market value. Notably, though the market analysis was obtained in December, the petition was not filed until June 14, 2020, about six months later. This time difference is most likely the reason that the petition value appears to be higher as represented by the appraised value.

[3] This is precisely the reason for conversion, to avoid the costs associated with a valuation hearing and the concern that

surely gone to lengths to, I believe, properly arrive at the true and fair value for the real property and to pay to creditors the non-exempt equity in the property existing at the time of filing as required by the Bankruptcy Code.

As to the income, new income information has been supplied to the Trustee and a new plan and, inter alia, amended income and expense schedules, are being filed with the Court.  The new schedules are being filed contemporaneously with this response, to support the payment required under the plan.  The plan payment accounts for the new real estate mid-value and the automobile equity.  The Debtor will be able to make the payment that is proposed under the plan and the plan payment is supported by the new amended income and expense schedules. The Debtor and I have painstakingly re-reviewed all of the income and expense information and all updated current income and expenses are appropriately reported on the new schedules.  Obviously, over time there have been some changes accounting for the Debtor's situation.  The Debtor is now driving primarily, if not principally, with Lyft, and according to the Debtor, the income that he earns from Lyft driving, will be close in amount to the amounts now scheduled for driving (between Uber and Lyft). The reason for the switch to Lyft is set forth on the new schedules.

This case was filed to address overwhelming debt that the Debtor obtained, mostly, in an serious effort to start a business, a coffee shop, to improve his economic situation. He had worked for a Dunkin Donuts store operator, in various locations, and believed he could make it on his own, given his past work experience in the field.  Those efforts failed and the coffee shop, like many other small businesses, did not survive. The Debtor was left near jobless with significant debt.  In addition to the debt, the Debtor has various ongoing medical problems and other medical issues which he faced in the past.  He has taken to driving, through the common ride sharing platforms, in order to earn a living.  Meanwhile, the Debtor has little or no safety net and no regular health insurance.  He is in desperate need of bankruptcy relief to address his debt situation.  The Debtor made some mistakes in not obtaining a current real estate appraisal in a rising market situation, a fault which the Debtor understands and accepts.  He has also changed and varied employment, over time, through ride platforms, in order to maximize his earnings to meet his ongoing expenses. The Debtor has acted in good faith in providing a fair minded auto valuation and accepted a mid-range value as to the real property, to further the ends of justice and satisfy the requirements of the Bankruptcy Code.

For these reasons, the Debtor requests that the Court confirm the Modified Plan as proposed.

---

the value may have increased over time due to the rapid increase in real estate values placing the Debtor in jeopardy of losing the property.

Respectfully Submitted,
/S/ HERBERT B. RAYMOND, ESQ.
Raymond & Raymond, Esqs.**
By: HERBERT B. RAYMOND, ESQ.

** Jeffrey Raymond, Esq., Attorney, Herbert Raymond, Esq., Attorney, Kevin Delyon, Esq., Attorney